**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| ALIZE VALDEZ, as Personal Representative for the Estate of ANTHONY J. VALDEZ, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>JARED KNIGHTON; BRIAN REDD; and JOHN DOES 1-8,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-cv-00666-DAK-DBP<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Dustin B. Pead |

This matter is before the court on Defendants' Motion to Dismiss [ECF No. 36]. On August 20, 2026, the court held a hearing on the motion. At the hearing, Plaintiff was represented by George T. Waddoups, and Defendants were represented by Justin P. Anderson. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

In September 2023, Anthony J. Valdez (Valdez) was an inmate at the Utah State Correctional Facility. On September 20, 2023, Sergeant Gomez transferred Valdez to Bear Unit 4, Section 5, which houses many of the prison's male general population inmates. Valdez informed Gomez that he was "modified," meaning he was no longer an active gang member and was trying to separate from the Southsiders gang. Gomez told Valdez to let his new commanding officer know he was modified so that he could be properly housed. Upon his arrival at Bear Unit 4, Sergeant Knighton contacted Valdez. Valdez told Knighton that he was a modified Southsider

who needed safe housing. Knighton did not know what "modified" meant and Valdez explained he was trying to abandon his gang affiliation. Knighton told Valdez that he would be housed in Section 5 and explained that there were active Southsider members in that section and listed the last names and gang monikers of seven or eight gang members. Valdez objected, exclaiming – "You've got to be serious!" Knighton responded, "This is where your bed is going to be and you need to get in there."

Shortly thereafter, Valdez was approached by two Southsider gang members who asked for his "papers" and if he was a gang member. Valdez responded that he was an ex-Southsider. Valdez immediately went to his cell and emailed his case worker expressing his concerns and requesting assistance being moved as soon as possible. The next morning Valdez was attacked by two men and stabbed 15-18 times.

Valdez was transported to the University of Utah hospital where he received treatment for his injuries. On September 24, 2023, Valdez was transported back to prison and placed in maximum security. One of the men who stabbed Valdez was also in the same maximum security unit in a nearby cell. Valdez's daughter, Alize Valdez, made a complaint to the prison, expressing concern that her father was still in danger by being in close proximity to his assailant. After Alize Valdez's complaint, Valdez was moved to a safe location. Sometime after his subsequent release from prison, Valdez fell to his death after being tased by a Utah Highway Patrol trooper.

Plaintiff Alize Valdez brought the instant lawsuit on behalf of her father's estate. Plaintiff alleges violations of Valdez's constitutional rights under the Eighth Amendment and 42 U.S.C. § 1983 by Sergeant Knighton, Assignment Office Doe Defendants and the then executive director of the Utah Department of Corrections, Brian Redd (collectively, "Defendants"). The

Defendants bring the present motion to dismiss under Rule 12(b)(6).

## STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). "When there are well-pleaded factual allegations [as opposed to legal conclusions], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Allegations must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The court is "not bound by conclusory allegations, unwarranted inferences or legal conclusions." *Hackford v. Babbit,* 14 F.3d 1457, 1465 (10th Cir. 1994).

## DISCUSSION

*Qualified Immunity*

The doctrine of qualified immunity operates to generally shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Once a defendant to a § 1983 action raises a qualified immunity defense, the burden shifts to the plaintiff to show both facts and law to establish that the defendant is not entitled to a qualified immunity." *Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994). The plaintiff must then "come forward with facts or allegations sufficient to

show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir. 1988). "If the plaintiff meets this burden, then the normal burden of the movant for a motion to dismiss falls again upon the defendant." *Workman*, 32 F.3d at 479.

The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "The deliberate indifference of a prison official 'to a substantial risk of serious harm to an inmate violates the Eighth Amendment'" *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Farmer*, 511 F.3d at 828). To establish that a defendant acted with deliberate indifference, a plaintiff must allege "(1) that [the defendant] was aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed; (2) that [the defendant] actually drew that inference; and (3) that [the defendant] was aware of and failed to take reasonable steps to alleviate that risk." *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018). "Deliberate indifference requires more than a showing of simple or heightened negligence." *Verdecia*, 327 F.3d at 1175.

Even when a complaint plausibly alleges deliberate indifference, the defendant remains entitled to qualified immunity unless the constitutional right was clearly established at the time of the alleged conduct. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). The inquiry must be particularized to the circumstances confronting the defendant. Existing Supreme Court or Tenth Circuit precedent must encompass materially similar conduct. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

*Sergeant Knighton*

Plaintiff alleges that, upon arriving at Section 5, Valdez informed Knighton that he was a modified Southsider attempting to abandon the gang and needed a safe cell. Knighton identified seven or eight active Southsiders housed in the same unit, causing Valdez to express alarm. Knighton nevertheless directed Valdez to enter the cell. Valdez was attacked and seriously injured by Southsiders the following day.

Taken as true, these allegations plausibly establish an objectively substantial danger. Plaintiff allegedly was attempting to leave the same gang whose active members occupied the assigned section, and he was severely attacked shortly after entering it. The allegations also plausibly support the subjective component of deliberate indifference. Plaintiff did not merely express a preference for different housing. He explained his modified status, requested safe housing and expressed alarm upon learning that active Southsiders were housed in the same section. Despite these express concerns, Knighton placed Valdez in the cell without taking any protective measures. Drawing reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that Knighton recognized and disregarded a substantial gang-related risk. Plaintiff therefore satisfies the first qualified immunity prong at this stage.

Plaintiff has not, however, carried her burden under the clearly established prong. Plaintiff principally relies on *Wilson v. Falk,* 877 F.3d 1204 (10th Cir. 2017). There, the prisoner had previously been attacked by members of a rival gang and told prison officials that Surenos were "after him," had threatened his life, and were going to "get him." *Id.* at 1211. He also submitted numerous written requests for protection. *Id.* at 1208. The Tenth Circuit concluded that a reasonable jury could find the officials subjectively aware of a substantial risk. *Id.* at 1213. Although *Wilson* supports Plaintiff's contention that he has plausibly alleged deliberate

indifference, it does not clearly establish the unlawfulness of Knighton's conduct.

Here, Plaintiff does not allege that Valdez told Knighton that anyone had threatened him, that an attack was planned or imminent, that he had previously been assaulted, or that a particular inmate intended to harm him. His modified status and request for safe housing plausibly communicated a serious concern. But the clearly established inquiry demands more than a plausible inference of deliberate indifference. Existing precedent must have placed the constitutional question "beyond debate." *Wesby*, 583 U.S. at 63. *Wilson* does not clearly establish that an officer necessarily violates the Eighth Amendment by placing a modified gang member among active members of that gang when the prisoner has not reported a threat, previous assault, intended attacker, or anticipated violence. Although *Wilson* subsequently provided relevant notice regarding gang related housing dangers, its materially stronger warnings do not place the constitutionality of Knighton's alleged conduct beyond debate.

Additionally, the other authorities cited by Plaintiff similarly involved officials who received notice of specific threats, prior attacks and identifiable patterns of danger. *See Howard v. Waide*, 534 F.3d 1227 (10th Cir. 2008); *Rodriguez v. Sec'y for Dep't of Corrections*, 508 F.3d 611 (11th Cir. 2007); *Walsh v. Mellas*, 837 F.2d 789 (7th Cir. 1988). Those cases do not place beyond debate that an officer violates the Eighth Amendment when an inmate explains that he has left a gang and requests safe housing but does not report a threat, prior attack, intended assailant or anticipated violence.

Nor was the alleged violation so obvious that no analogous precedent was required. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violated established law even in novel factual circumstances."). Assessing the danger presented by an inmate's modified status involves contextual judgments about inmate classifications,

institutional security and the information communicated to the officer. The circumstances, therefore, differ from the unusually egregious conduct found obviously unconstitutional in *Hope.*

Accordingly, although Plaintiff plausibly alleges that Knighton acted with deliberate indifference, he has not shown that Knighton violated a right that was clearly established in the particular circumstances alleged. Knighton is therefore entitled to qualified immunity.

*Director Redd*

Plaintiff alleges that Redd was responsible for prison operations, including the continued use of a manual inmate placement system. According to Plaintiff, the system used criteria that were not entirely "formalized or prioritized," although assignment personnel were supposed to consider gang affiliation and safety concerns. Plaintiff further alleges that Redd knew approximately 1.5% of inmates were classified as modified and that gangs were responsible for nearly one-quarter of documented prison incidents. Plaintiff also relies in part on a state audit issued several months after the attack, which found that the manual and subjective process sometimes resulted in placements that were "not always optimal."

A supervisor cannot be held liable under § 1983 merely because an employee under his authority committed a constitutional violation. *See Dobbs v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Plaintiff must allege Redd's personal involvement, a casual connection to the injury, and Redd's own deliberately indifferent state of mind. *Id.* The Complaint does not satisfy these requirements. Knowledge of generalized gang violence does not establish that Redd actually recognized that the placement system exposed modified gang members to attacks by their former gang members. Plaintiff does not allege that Redd received reports of similar placements or assaults, ignored warnings about a specific defect, or directed assignment personnel to disregard gang affiliation or safety information. Indeed, the Complaint alleges that

those considerations were supposed to be included in placement decisions.

The general statistics concerning gang violence do not bridge the gap. Knowledge that gangs are involved in a substantial portion of prison violence does not establish that Redd recognized that the placement system exposed modified inmates to attacks by their former gangs. Neither does the allegation that approximately 1.5% of prisoners were modified identify any previous attack, grievances or report that would have alerted Redd to the particular risk alleged here. Further, neither the Complaint nor the audit identify a prior attack on a modified inmate caused by the placement process.

Plaintiff relies on *Keith v. Koerner*, 707 F.3d 1185 (10th Cir. 2013) to argue that Redd should be liable for Valdez's injuries. However, the present case differs dramatically from the facts at issue in *Keith*. The complaint in *Keith* identified fifty-four reported incidents of sexual misconduct, thirty-three incidents of undue familiarity and a host of structural policy problems and inconsistent discipline in the prison. *Id.* at 1189. Those detailed allegations supported an inference that the warden in *Keith* knew of the specific continuing danger. Such specific allegations are absent from the Complaint here.

Moreover, describing a system as manual, antiquated or overly subjective does not establish deliberate indifference. At most, the allegations suggest that the Department of Corrections used an imperfect administrative process. Additionally, the Complaint does not explain how a particular defect in that process caused Plaintiff's placement. Plaintiff therefore failed to plausibly allege that Redd personally violated the Eighth Amendment. In addition, Plaintiff identified no Supreme Court or Tenth Circuit decision clearly establishing that maintaining such a placement system violated the Constitution. Accordingly, Redd is entitled to qualified immunity.

*John Does 1-4*

Plaintiff alleges that John Does 1-4 worked in the Assignment Office and were responsible for placing Valdez in Section 5 and, after the assault, near one of his attackers. Plaintiff contends that the Assignment Office received information documenting Valdez's modified status, is responsible for considering gang affiliation and safety concerns, and knew that Section 5 housed several active Southsiders. She further alleges that following the attack, the Assignment Office moved both Valdez and his attacker but later placed them only a few cells apart for approximately five weeks.

These allegations do not plausibly establish that any particular Doe Defendant violated the Constitution. When several officials assert qualified immunity, the complaint must make clear "exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008). Referring collectively to four Doe Defendants prevents the court from determining each Defendants' personal participation.

As to the original placement, the Complaint does not identify which Doe selected or approved Section 5, what information that person reviewed, whether that person understood the significance of Plaintiff's modified status, or whether that person knew which active Southsiders were housed there. The presence of Plaintiff's classification information somewhere within the Department of Corrections does not establish that a particular Doe reviewed it and actually recognized a danger. The post attack placement presents a more apparent potential risk, but the allegations remain deficient. Plaintiff's claims that all four Doe Defendants knew of and intentionally disregarded the danger is a collective and conclusory recitation of the elements. Disregarding the conclusory allegations of knowledge and deliberate disregard, the Complaint

does not plausibly establish that any particular Doe Defendants violated Valdez's constitutional rights and therefore fails at the first qualified immunity prong. Because the deficiency may be cured by allegations identifying each Doe by role and specifying that defendant's conduct and knowledge, the claims against the Doe Defendants are dismissed without prejudice.

**CONCLUSION**

Based on the foregoing reasons, Defendants' Motion to Dismiss [ECF No. 36] is GRANTED. The claims against Defendants Knighton and Redd are dismissed with prejudice. The claims against the Doe Defendants are dismissed without prejudice.

DATED this 16th day of September 2026

BY THE COURT:

Dale A. Kimball

DALE A. KIMBALL,
United Sates District Judge